*David Michael Crawford v. State of Maryland*, No. 0856, September Term, 2023.
Opinion by Albright, J.

**ARSON – EVIDENCE – IN GENERAL**

Arson is likely to be a clandestine offense and frequently must be proven by circumstantial evidence and inferences drawn therefrom.

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – OTHER MISCONDUCT AS EVIDENCE OF OFFENSE CHARGED IN GENERAL – IN GENERAL**

Evidence of a defendant's other bad acts is only admissible if: (1) the evidence is offered for a non-propensity purpose that is specially relevant to the case; (2) the defendant's involvement in the other bad acts is established by clear and convincing evidence; and (3) the necessity for and probative value of the evidence is not substantially outweighed by the danger of any unfair prejudice likely to result from admitting it. Md. Rule 5-404(b).

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – OTHER MISCONDUCT AS EVIDENCE OF OFFENSE CHARGED IN GENERAL – FACTORS AFFECTING ADMISSIBILITY – PREJUDICIAL EFFECT AND PROBATIVE VALUE**

The circuit court's analysis of whether the necessity for and probative value of other bad act evidence is substantially outweighed by the danger of unfair prejudice implicates the exercise of the trial court's discretion, which is reviewed for an abuse of discretion. Md. Rules 5-403, 5-404(b).

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – OTHER MISCONDUCT AS EVIDENCE OF OFFENSE CHARGED IN GENERAL – FACTORS AFFECTING ADMISSIBILITY – NECESSITY FOR EVIDENCE**

The "necessity" for evidence of multiple other bad acts may increase when the evidence is circumstantial in nature and the other bad acts together strengthen the overall probative value of the other bad act evidence. Md. Rule 5-404(b).

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – NATURE AND CIRCUMSTANCES OF OTHER MISCONDUCT AFFECTING ADMISSIBILITY – FACTORS AFFECTING ADMISSIBILITY**

Admissibility of evidence of multiple other bad acts requires a case-specific analysis and the number of other bad acts is not determinative of their admissibility. Md. Rules 5-403, 5-404(b).

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – OTHER MISCONDUCT SHOWING KNOWLEDGE – ARSON AND MALICIOUS MISCHIEF**

Evidence of other bad acts is generally admissible in arson cases if it tends to show identity or motive. Md. Rule 5-404(b).

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – OTHER MISCONDUCT SHOWING IDENTITY – ARSON**

Evidence of eight other fires was admissible to prove that defendant set the four fires with which he was charged, especially where all twelve fires were connected to a list found on the defendant's cellphone. Md. Rule 5-404(b).

**CRIMINAL LAW – EVIDENCE – OTHER MISCONDUCT BY ACCUSED – OTHER MISCONDUCT SHOWING MOTIVE – ARSON**

Evidence of eight other fires was admissible to prove the defendant's motive for setting the four fires with which he was charged, especially where the defendant was acquainted with each of the victims but only had inconsequential grievances with them. Md. Rule 5-404(b).

**COURTS – ESTABLISHMENT, ORGANIZATION, AND PROCEDURE – OPINIONS – OPERATION AND EFFECT IN GENERAL**

A citation to an out-of-state unreported or unpublished opinion that does not indicate "whether the opinion is precedent in the issuing jurisdiction" does not comply with Maryland Rule 1-104(b). Md. Rule 1-104(b).

**CRIMINAL LAW – TRIAL – ISSUES RELATING TO JURY TRIAL – DISCHARGE OF JURY WITHOUT VERDICT; MISTRIAL – WITNESSES – EXAMINATION**

When determining whether a mistrial is required because of a witness's improper testimony, courts consider: (1) whether reference to inadmissible evidence was repeated or was a single, isolated statement; (2) whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; (3) whether the witness making the reference to inadmissible evidence is the principal witness for the prosecution; (4) whether credibility of that witness is a crucial issue; and (5) whether a great deal of other evidence exists.

**CRIMINAL LAW – MOTIONS FOR NEW TRIAL – DISCRETION OF COURT AS TO NEW TRIAL**

A motion for a new trial premised on errors during trial is either granted or denied in an exercise of the trial court's discretion and is thus reviewed for an abuse of discretion.

**CRIMINAL LAW – TRIAL – ISSUES RELATING TO JURY TRIAL – DISCHARGE OF JURY WITHOUT VERDICT – WITNESSES – UNRESPONSIVE, UNSOLICITED, AND UNEXPECTED TESTIMONY**

Trial court did not abuse its discretion in denying a motion for mistrial where the defendant was not prejudiced by detective's single unsolicited statement that the defendant had refused consent to a warrantless search of his phone where the detective also mentioned that the defendant provided the phone's passcode, the defendant's knowledge of the contents of his phone were not crucial to proving the charges against him, credibility was not a crucial issue in the case, and the trial court offered a curative instruction.

Circuit Court for Howard County
Case No. C-13-CR-21-000152

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0856

September Term, 2023

_____

DAVID MICHAEL CRAWFORD

v.

STATE OF MARYLAND

_____

Nazarian,
Albright,
Sharer, J. Frederick,
   (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Albright, J.

_____

Filed: May 5, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

A jury in the Circuit Court for Howard County found David Michael Crawford, Appellant, guilty of eight counts of attempted first-degree murder, three counts of first-degree arson, and one count of malicious burning in connection with four separate fires committed in Howard County. Mr. Crawford was sentenced to two consecutive life terms plus a consecutive term of seventy-five years. In this appeal, Mr. Crawford raises two questions for our review, which we rephrase as follows:[1]

I.    Did the circuit court abuse its discretion by admitting evidence of eight other fires against Mr. Crawford?

II.    Did the trial court abuse its discretion by denying Mr. Crawford's motion for mistrial after testimony was elicited that Mr. Crawford refused a search of his phone?

We shall affirm the judgments.

## FACTUAL AND PROCEDURAL HISTORY

### A.    The Howard County Fires

Over the course of a police investigation, David Michael Crawford—a retired police chief—was connected to four separate fires that occurred in Howard County, Maryland, between March 2017 and September 2018. These were:

---

[1] Mr. Crawford phrases his questions as:

1.  Did the trial court abuse its discretion by failing to limit the number of the eight additional other fires admitted in an arson trial that already joined four separate fires?

2.  Did the trial court err in admitting testimony that Crawford refused to consent to a search of his phone, and if so, did the trial court abuse its discretion by declining to grant a mistrial on that basis?

## 1. The Byrne Fire (March 5, 2017)

*Ellicott City, Howard County*[2]

Around 3:00 a.m. on the morning of March 5, 2017, Erica Byrne was woken up by her husband alerting her to a series of popping noises and a fire in the driveway. Ms. Byrne, her husband, and their children left their house immediately and alerted 911. A car, owned by Ms. Byrne's mother-in-law, was completely ablaze in the driveway in "a huge ball of flames." The flames had ignited in the rear of the vehicle, which had been parked about five feet away from the house.

Ms. Byrne knew Ms. Crawford (Mr. Crawford's wife) through Ms. Byrne's role as executive director of a court-appointed special advocates ("CASA") program. Ms. Crawford had applied to volunteer with CASA and attended a training for volunteers led by Ms. Byrne. During the portion of training on white privilege and implicit bias, however, Ms. Crawford challenged Ms. Byrne regarding the training material. On November 1, 2016, Ms. Byrne sent Ms. Crawford an email following up with her about whether CASA would be a good fit; Ms. Crawford replied with an angry phone call. When Ms. Crawford did not complete the training, she was dismissed from the program.

## 2. The Antico Fire (June 23, 2017)

*Elkridge, Howard County*

Around 4:00 to 4:15 a.m. on June 23, 2017, Russell Antico awoke to the smell of burning; he was confronted by a "haze all around the first floor." His garage was filled

---

[2] For the sake of the victims' privacy, we omit the street addresses where the fires were set.

with "pure black smoke." He alerted his wife, their minor children, and his mother-in-law and evacuated the house immediately. The bottom corner of the attached garage was already charred, and smoke was pouring out. In the fire marshal's investigation, Lieutenant Frizzell concluded that the fire had been initiated by "an ignitable liquid [that] was poured on the ground and ignited by an open flame[]" on the exterior of the garage—just a few feet away from the bedroom of Mr. Antico's mother-in-law.

Dr. Antico and his wife, also Dr. Antico, were Mr. Crawford's chiropractors. Dr. Russell Antico was unable to recall any disagreements with Mr. Crawford.

### 3. The First Henderson Fire (December 9, 2017)

*Ellicott City, Howard County*

Ringing smoke detectors woke up Evelyn and Scott Henderson around 3:00 a.m. on December 9, 2017. Their house was "full of smoke," and the garage was on fire. There were "flames coming through one of the walls" that Mr. Henderson tried to put out but could not. The Hendersons[3] fled the house and called 911. The garage and large portions of the house were destroyed, and both of the Hendersons' cars, which had been sitting in their driveway, were melted by the fire.

Ms. Henderson met Mr. Crawford, who lived about a half mile away from the Hendersons, in 2013. She was walking her dog in the neighborhood where both families lived when Mr. Crawford approached her regarding her use of a "pinch collar." They again crossed paths during community meetings to discuss a major redistricting effort in

---

[3] Mr. and Mrs. Henderson were at home with their minor child and dog.

their neighborhood. During a presentation Mr. Crawford gave in a meeting on August 31, 2017, Ms. Henderson, as she described it, "interrupted the presentation" to address people herself when she "could kind of tell that he was losing the crowd a little bit."

4.     The Second Henderson Fire (September 22, 2018)

*Ellicott City, Howard County*

Around 3:30 a.m. on September 22, 2018, Mr. Henderson received a call from a neighbor alerting him to a second fire at the Hendersons' home. This was just a week before the Hendersons were set to move back in after rebuilding from the first fire. By the time the Hendersons drove over from the rental house where they had been staying, their house was "[f]ully engulfed in flames." The odor of gasoline was detected at the scene, and the presence of gasoline was confirmed by forensic testing.

### B.     The Case Against Mr. Crawford

Investigators eventually linked each of the fires to Mr. Crawford, and a valid search warrant was executed on his home on January 5, 2021. Found in Mr. Crawford's garage were gloves, a black hat, and a lighter. Additional lighters and gloves were found in the back of Mr. Crawford's vehicle. Several of these items tested positive for gasoline. Mr. Crawford's vehicle also had a custom license plate reading "SURECAN."[4]

Digital evidence uncovered on Mr. Crawford's electronic devices implicated him further in the Howard County fires. On his phone and computer were numerous internet search queries regarding the victims of the fires and their homes (both before and after

---

[4] SureCan is the company that manufactured the red portable gas containers that were found in Mr. Crawford's garage.

4

the fires), as well as photographs of their homes (before and after the fires). A note on

Mr. Crawford's phone listed the following:

Expedition Unknown[5]

Adventure
Josh Gates

Josh Gates
Martin
Mark
Price
Hawkins
Scott
Justin (3)
McLaughlin
Chiro
White Privilege
Evelyn (2)

As counsel has, we will refer to this note as "the List."

Investigators determined that the last three entries on the List seemed connected in

some way to the victims of the four Howard County fires:

(1) **"Chiro" | Antico Fire:** The "Chiro" entry pertained to the fact that the Anticos were Mr. Crawford's chiropractors;

(2) **"White Privilege" | Byrne Fire:** The "White Privilege" entry could be explained by Ms. Crawford's disagreement with Ms. Byrne regarding CASA's training materials; and

(3) **"Evelyn (2)" | Henderson Fires:** The "Evelyn (2)" entry correlated to the two separate fires inflicted on Evelyn Henderson and her family.

---

[5] "Expedition Unknown" was also the title of a television show. It was hosted by Josh Gates. Here, we reproduce the text of the List. We have reformatted it to remove some of the white space that appeared on the admitted exhibit.

Other entries on the list confirmed Mr. Crawford's connection to the Howard County fires. Six of the other entries referred to victims of eight separate fires in other Maryland counties.[6] As we discuss below, all of these other fire victims had some kind of relationship with Mr. Crawford.

Following this investigation, Mr. Crawford was indicted on: (1) eight counts of attempted first-degree murder; (2) three counts of first-degree arson; and (3) four counts of first-degree malicious burning. He was arrested on March 4, 2021. He moved to sever the counts against him, but the circuit court denied the motion.[7]

Before trial, the State moved to admit evidence, under Maryland Rule 5-404(b), of the eight other fires that had occurred outside Howard County. The State asserted that Mr. Crawford was responsible for the eight fires and connected him to them through the List, among other evidence. The purpose for introducing the eight, argued the State, was to prove Mr. Crawford's common scheme, motive, and identity as the perpetrator of the Howard County fires. The circuit court held an evidentiary hearing on the motion on September 26, 2022. The circuit court found that evidence of the eight other fires was admissible to prove identity and motive and that the State had proven that the fires were set by Mr. Crawford by clear and convincing evidence. Finally, the circuit court concluded that "the effect of this evidence is to identify [Mr. Crawford] as the perpetrator," and thus concluded that "there is a significant necessity [for the admission

---

[6] The eight other fires matched the entries of: "Martin," "Justin (3)," "Price," "Hawkins," "McLaughlin," and "Scott."

[7] Mr. Crawford does not challenge the denial of his severance motion.

of evidence of these fires] that outweighs any prejudice[.]" Accordingly, the circuit court granted the State's motion to permit evidence of all eight other fires.

At the ensuing jury trial, the State called twenty-nine witnesses, including police officers, fire marshal investigators, forensic scientists, and the victims of the fires and their neighbors.[8] The jury deliberated and found Mr. Crawford guilty of the crimes detailed above. After sentencing, Mr. Crawford noted this timely appeal.

Additional facts are included in our discussion of the issues, as needed.

### DISCUSSION

I. **The circuit court did not abuse its discretion by admitting evidence of eight other fires committed by Mr. Crawford.**

   A. *Evidence of the Eight Other Fires*

During the motions hearing on September 26, 2022, and at trial, the State presented evidence of the eight other fires allegedly set by Mr. Crawford, all of which occurred in other Maryland counties between May 2011 and November 2020 and none of which were the subject of the Howard County indictment Mr. Crawford faced.[9] In moving that this evidence be permitted, the State theorized that the "persons/families" on the List were the victims of incendiary[10] fires set by Mr. Crawford and that "[t]he

---

[8] Mr. Crawford presented no defense case.

[9] All of the eight other fires were in Maryland, but they did not occur in Howard County, where the indictment in the present case was lodged.

[10] During trial, Lieutenant Ruch of the Frederick County Fire Marshal's Office explained that fires could be classified in three different ways: "incendiary, accidental, or undetermined."

7

evidence from [those eight other] incendiary fires confirms [Mr. Crawford's] identity as the arsonist; it establishes his motive and his common scheme and plan." As to Mr. Crawford's motive, the State added that "[Mr. Crawford], believing people had wronged him, sought to exact revenge by committing arson. Out of the nine victims/families, eight allege, at best, an unpleasant relationship with [Mr. Crawford], ranging from family frictions to work confrontations to school redistricting skirmishes."

Each of the eight other fires, the State argued, matched an entry on the List. These matches were the Flemion fire ("Martin"), the three Scherstrom fires ("Justin (3)"), the Price fire ("Price"), the Hawkins fire ("Hawkins"), the McLaughlin fire ("McLaughlin"), and the Scott fire ("Scott").

### 1. The Flemion Fire (May 20, 2011)

*Laurel, Prince George's County*

Martin Flemion was woken up by a neighbor at 1:30 a.m. on May 20, 2011. His car, sitting in his driveway, had been lit on fire. Surveillance footage showed a perpetrator, but not their face. A piece of burned pants was discovered by the police in a storm grate near Mr. Flemion's house; Mr. Crawford, two weeks later, posted online inquiring about treatment for a recent second-degree burn. At trial, the State entered a photograph into evidence showing a scar on Mr. Crawford's lower leg.

Mr. Flemion was serving as the City Administrator for Laurel when he met Mr. Crawford in 2018. He interviewed Mr. Crawford for the position of Deputy Police Chief and believed he was not a fit, so he recommended Richard McLaughlin instead.

8

### 2. The First Scherstrom Fire (September 5, 2016)

*Clarksburg, Montgomery County*

Justin Scherstrom and his wife, Miriam, were, for the first time, victims of a fire on September 5, 2016. They were out of town at the time. The fire "started at the garage and went all the way up the back of the townhouse up to the beams in the roof, and also impacted the units on either end of [the Scherstroms']." Samples taken from the scene of the fire tested positive for gasoline, and the fire was classified as incendiary. Mr. Scherstrom suggested Mr. Crawford as a suspect to investigators at the time.

Mr. Scherstrom is Mr. Crawford's stepson (Ms. Crawford's son), and the Scherstroms and Crawfords had a "very rocky" and "tumultuous" relationship for several years. Mr. Scherstrom recalled several particular points of conflict in their relationship, for example, when Mr. Scherstrom's father (Ms. Crawford's first husband) was involved in the Scherstroms' wedding ceremony, and when the Scherstroms did not baptize their children. In general, Mr. Scherstrom described Mr. Crawford as "a very antagonistic person." Ms. Scherstrom, too, described a tumultuous relationship with both Mr. Crawford and Ms. Crawford.

### 3. The Second Scherstrom Fire (September 29, 2017)

*Clarksburg, Montgomery County*

The Scherstroms were the victims of a second fire on September 29, 2017. They were not living at the house at the time but had renters lined up who "were supposed to move in within a week or week and a half after [the] fire happened." Fortunately, "the fire put itself out, so the damage was not as much as the first fire[,]" but it "still caused

9

significant damage[.]" For the second time, a portion of the Scherstroms' garage was burned; and, again, testing on portions of the garage door showed the presence of gasoline. The search of Mr. Crawford's electronic devices uncovered web searches of the Scherstroms' street several days before the fire. Mr. Crawford's Apple Health Data recorded that Mr. Crawford had been active and taking steps in the early morning hours of September 29, too. When presented with surveillance footage of the incident, Ms. Scherstrom testified that the perpetrator wore similar pants as Mr. Crawford, and had a similar gait as him, too.

Ms. Scherstrom testified to more incidences of friction between the Scherstroms and Crawfords prior to the fire on September 29, 2017. Rather than asking the Crawfords to watch their son on a few occasions when the Scherstroms went out of town, the Scherstroms asked other family members to do so instead, including when the Scherstroms went on vacation in March 2017 and attended a wedding at the beginning of September 2017. The second Scherstrom fire occurred a day before the Scherstroms departed for another out-of-town family wedding.

4.      The Price Fire (April 3, 2018)

*Jefferson, Frederick County*

Clark Price woke up around 3:40 a.m. on April 3, 2018, to a fire in his garage. An investigation deemed the fire to be incendiary, and several items from the scene tested positive for gasoline. Web searches for Mr. Price's home address (from January 2018) were on Mr. Crawford's devices. In a response to a Facebook post Mr. Price made about the fire, Mr. Crawford direct messaged Mr. Price to request photos of the fire.

10

Mr. Price was one of Mr. Crawford's previous coworkers, but the two had not spoken for nearly eighteen years. Mr. Price described his relationship with Mr. Crawford and how Mr. Price, twice, had not recommended Mr. Crawford for a promotion. On a separate occasion, he had overruled Mr. Crawford during an employee dispute and Mr. Crawford "immediately became agitated and upset." Mr. Price also recommended changing the qualifications to a position within the department to "civilianize" it. As a result, Mr. Crawford was no longer in contention for the position.

### 5. The Hawkins Fire (March 3, 2019)

*Waldorf, Charles County*

Alphonso Hawkins, Jr. woke up around 3:00 a.m. on March 3, 2019, to his truck burning out in the driveway of his house. "[T]he whole truck was in flames." The address where he lived was in Mr. Crawford's search history from both June and August of 2018.

Alphonso Hawkins, Jr. did not know Mr. Crawford. His father, Alphonso Hawkins, Sr., on the other hand, had worked with Mr. Crawford and had known him "in passing." However, Mr. Hawkins, Sr. could not recall any negative interactions with Mr. Crawford.

### 6. The McLaughlin Fire (March 16, 2019)

*Laurel, Prince George's County*

Richard McLaughlin was awoken by his dog around 3:30 a.m. on March 16, 2019. When he got up, he noticed "a lot of smoke and something smelled as if it was burning." His garage, two cars, and a side of his house were on fire. Surveillance footage of the incident showed a perpetrator with a gait similar to that of Mr. Crawford. Searches of

11

Mr. Crawford's electronic devices revealed web searches of Mr. McLaughlin's home in February 2019 and a PowerPoint presentation about Mr. McLaughlin. A calendar entry for March 15, 2019, on Mr. Crawford's phone was entitled "McLaughlin Fire."

Mr. McLaughlin was another of Mr. Crawford's previous coworkers. He described a particular incident with Mr. Crawford at work dating back to 2009, when Mr. Crawford was "very hostile" towards Mr. McLaughlin after a disagreement. Mr. McLaughlin was also the individual Mr. Flemion recommended for the position of Deputy Police Chief instead of Mr. Crawford.

### 7. The Scott[11] Fire (July 27, 2019)

*Brooklyn, Anne Arundel County*

Around 3:00 a.m. on July 27, 2019, Scott Crawford noticed an "orange glow" outside his window. The entire deck around Scott's pool was on fire, and "the fire was so engulfed and so hot, that it actually, the pool rails and everything, the liner, everything was on fire." Investigators who responded to the fire detected "the overwhelming smell of gasoline."

Scott Crawford is Mr. Crawford's nephew. Scott and Mr. Crawford had a disagreement around 2017 or 2018 and they stopped speaking afterwards. On the day of

---

[11] Due to the shared surname of the involved individual and Appellant, we refer to Scott Crawford by his first name. We mean no disrespect in doing so.

the fire, Scott had been set to host an afternoon pool party for family and friends to celebrate his daughter's graduation; the Crawfords had not been invited.[12]

### 8. The Third Scherstrom Fire (November 17, 2020)

*Clarksburg, Montgomery County*

The Scherstroms were the victims of a fire for the third time on November 17, 2020. This time, the Scherstroms were at home when they "got a call from a neighbor in the middle of the night that [their] garage was on fire." By the time they got outside, they "were shocked to see the whole garage in flames." The fire began on the exterior of their garage but charred the inside of it as well. Investigators once more detected the odor of gasoline. Mr. Crawford's phone calendar had an entry on November 17, 2020, entitled "Scherstrom fire." Mr. Crawford's Apple watch data showed him to be active between 1:42 and 4:15 a.m. on November 17.

Ms. Scherstrom noted specific disagreements that had occurred between the Crawfords and Scherstroms prior to the third fire related to the COVID pandemic. Ms. Scherstrom had been dealing with a "high-risk pregnancy" and explained that the Crawfords "just didn't have the same approach to COVID" as the Scherstroms did. In addition to seeing the Crawfords "much less," the Scherstroms also went on a beach trip in August 2020 with Ms. Scherstrom's parents and Mr. Scherstrom's father and

---

[12] The State also presented evidence that, as a result of the fire, Scott moved the pool party to Mark Kratzer's house. Search inquiries and photos of Mr. Kratzer's home were found on Mr. Crawford's electronic devices in August 2019, and the State argued that the "Mark" entry on Mr. Crawford's List connected to Mark Kratzer.

13

stepmother (but without the Crawfords) after everyone agreed to quarantine for fourteen days beforehand.

## B. The Circuit Court's Ruling

The circuit court granted the State's motion to permit evidence of the eight other fires under Maryland Rule 5-404(b). Engaging in the three-part *State v. Faulkner*, 314 Md. 630 (1989), analysis for the admission of Rule 5-404(b) evidence,[13] the circuit court determined that the first two steps were satisfied. The circuit court noted several commonalities between the fires, including: every victim had some relationship with Mr. Crawford; every fire occurred at night (and many between 3:00 and 4:00 a.m.); gasoline was present at nearly all the fires; the starting point of every fire was near the garage and driveway; several fires were initiated in the same way; there was "evidence that [Mr. Crawford] has certain behavior[] traits that may suggest . . . to a jury that there's no slight that could be trivial"; and entries on Mr. Crawford's List corresponded to every victim of a fire. These commonalities, the circuit court acknowledged, "standing alone . . . wouldn't be enough but it's all circumstantial evidence, it all works together." Thus, the circuit court found "that by clear and convincing evidence, the identity exception has been met[,]" and clear and convincing evidence of "ill will for motive

---

[13] The three-part *Faulkner* test for admissible evidence under Maryland Rule 5-404(b) requires: (1) the evidence of other bad acts is relevant for a non-propensity purpose; (2) the defendant's involvement in the other bad acts is proven by clear and convincing evidence; and (3) "the necessity for and probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice." *Browne v. State*, 486 Md. 169, 190 (2023) (citing *Faulkner*, 314 Md. at 634–35).

purposes" had been established, too.[14]

Under the third step of the *Faulkner* analysis, the circuit court concluded that the probative value of the eight other fires and the State's need for the evidence outweighed any risk of undue prejudice:

> Because of the nature of the crime, it's at night, it's secretive, I think there is a necessity for this evidence and by unduly [sic] all evidence of guilt is prejudicial, if it's not prejudicial, then it's irrelevant and it's inadmissible.
>
> But I do not find that the evidence necessarily, that the evidence will cause the jury to think, well he set fires in Montgomery, and Charles, and Frederick County, so he must have set the Howard County fires. I don't think that that will be [the] effect of this evidence. I think the effect of this evidence is to identify [Mr. Crawford] as the perpetrator as envisioned by the exception under the law. I find there is a significant necessity on the part of it that outweighs any prejudice, well I don't see an undue prejudice but if there is, it's been outweighed by the necessity for [the evidence].

Thus, the circuit court permitted the State to introduce evidence of the eight other fires during Mr. Crawford's trial.

### C.  Mr. Crawford's Contentions

Mr. Crawford argues that "the [circuit] court abused its discretion by failing to limit the number of the eight additional other act fires[.]" The circuit court, he claims, "erroneously believed that no legal principle required a trial court to limit the number of prior bad acts when the number becomes excessive," and he asserts that Maryland law requires (and other jurisdictions support) that if there are multiple instances of bad act

---

[14] Mr. Crawford does not challenge the circuit court's findings on these criteria under *Faulkner*. We thus focus our attention on the third criterion, where Mr. Crawford contends error.

15

evidence, then the circuit court must "carefully consider whether to limit the number of other bad acts admitted[.]"

According to Mr. Crawford, the evidence of the eight other fires exacerbated risks of "propensity implications" from the Howard County fires already being tried together, and the eight other fires were central to the State's case. As such, admitting the evidence was not harmless error and warrants remand for a new trial. We disagree.

### D.  Law

Maryland Rule 5-404(b) provides:

> Evidence of other crimes, wrongs, or acts . . . is not admissible to prove the character of a person in order to show action in the conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake or accident, or in conformity with Rule 5-413.

Md. Rule 5-404(b). The rule makes two things clear: (1) "other bad acts"[15] evidence is *not* admissible to suggest that, because a person is of a particular character, they are more likely to have committed the crime they are on trial for; and (2) "other bad acts" evidence *is* admissible for "other purposes." *Browne v. State*, 486 Md. 169, 187 (2023). The "overarching concern" of the rule is to prevent conclusions that a "defendant is a 'bad person' and, therefore, should be convicted of the charges for which the defendant is on

---

[15] In Maryland, we have defined a "bad act" as "an activity or conduct, not necessarily criminal, that tends to impugn or reflect adversely upon one's character, taking into consideration the facts of the underlying lawsuit." *Klauenberg v. State*, 355 Md. 528, 549 (1999).

16

trial for that reason, rather than based on evidence specific to those charges." *Id.* at 187–88 (cleaned up) (quoting *Wynn v. State*, 351 Md. 307, 317 (1998)).

We apply an exclusionary approach when analyzing evidence of other acts under Maryland Rule 5-404(b). *Browne*, 486 Md. at 188–90. In *State v. Faulkner*, our Supreme Court laid out a three-part test for evidence to be excepted from the general exclusionary approach. *Faulkner*, 314 Md. at 634–35. Once again, in order to be admissible: "(1) the evidence must be specially relevant; (2) the defendant's involvement must be proved by clear and convincing evidence; and (3) the necessity for and probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice." *Browne*, 486 Md. at 190 (citing *Faulkner*, 314 Md. at 634–35). Mr. Crawford asserts error in only the third portion of the circuit court's analysis, and we focus our analysis accordingly.

Under the third part of the *Faulkner* test, the circuit court exercises discretion whether to admit evidence after weighing "the *necessity for* and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission." *Faulkner*, 314 Md. at 640–41 (quoting *Cross v. State*, 282 Md. 468, 474 (1978) (emphasis added in *Faulkner*)). This balancing test is concerned with *unfair* prejudice, and "[w]hat is 'unfair' is only the incremental tendency of the evidence to prove that the defendant was a 'bad man.'" *Cousar v. State*, 198 Md. App. 486, 516 (2011). On the other hand, when the other bad act evidence presents only a risk of "legitimate prejudice," the State should not be "constrained to forego relevant evidence and to risk going to the fact finder with a watered down version

17

of its case." *Cousar*, 198 Md. App. at 517 (quoting *Oesby v. State*, 142 Md. App. 144, 166–67, *cert. denied*, 369 Md. 181 (2002)).

We review the circuit court's balancing "of probative value against the danger of unfair prejudice for an abuse of discretion." *Browne*, 486 Md. at 194. Reversal of the circuit court is reserved only for the "rare and bizarre exercises of discretion that are, in the judgment of the appellate court, not only wrong but flagrantly and outrageously so." *Cousar*, 198 Md. App. at 517–18. If we find an abuse of discretion in the circuit court's ruling on evidence under Maryland Rule 5-404(b), we engage in harmless error analysis to determine if reversal is required. *Burral v. State*, 118 Md. App. 288, 298 (1997).

### E.    *Analysis*

To sharpen our focus on the circuit court's findings that Mr. Crawford does challenge, we start by outlining the findings that he does not. Mr. Crawford does not contest the trial court's findings regarding the first two steps of the *Faulkner* analysis. In other words, Mr. Crawford does not challenge the special relevance of the eight other fires for proving Mr. Crawford's identity as the culprit of the Howard County fires and his motive for setting them. Nor does Mr. Crawford challenge the circuit court's finding (by clear and convincing evidence) that he was the one who set the eight other fires. Thus, homing in on the last *Faulkner* step (i.e., whether the "*necessity for* and probativeness of the evidence" is substantially outweighed by the risk of unfair prejudice, *Faulkner*, 314 Md. 640–41), we disagree with Mr. Crawford that there was no need for the admission of the eight fires or that their probative value was substantially outweighed by the risk of unfair prejudice.

18

To be sure, the "needless presentation of cumulative evidence" can preclude admission of evidence under Maryland Rule 5-404(b). *Burris v. State*, 435 Md. 370, 392 (2013). Indeed, as Mr. Crawford argues, there may be a point where evidence of an additional bad act tips the scales towards unfair prejudice and inadmissibility under the balancing test in the third step of the *Faulkner* analysis. *See, e.g.*, *Cross*, 282 Md. at 474 (noting that all, some, or no other bad act evidence may be admissible depending on the application of the balancing test in 5-404(b)).

Here, though, the circuit court determined that "there is a significant necessity on the part of [all eight fires] that outweighs any prejudice[.]" As we have explained, "[a]rson is likely to be a clandestine offense and proof of it must often be by circumstantial evidence and inferences which may reasonably be drawn therefrom." *Nasim v. State*, 34 Md. App. 65, 76 (1976) (cleaned up). The circuit court recognized this principle and noted that "[b]ecause of the nature of the crime, it's at night, it's secretive, I think there is a necessity for this evidence[.]" As further described by the circuit court, it is "all circumstantial evidence" that "works together."

What made evidence of all eight other fires necessary was that all of them were perpetrated against people on Mr. Crawford's List. As the circuit court put it, "[Mr. Crawford] had a list of names on his computer and everybody whose house got burned name appeared on that list." Moreover, each person on the List was acquainted with Mr. Crawford but could only recall seemingly inconsequential grievances with

19

him.[16] We agree with the State that limiting its ability to connect as many List entries to other fires as possible would have significantly weakened its use of the List to prove Mr. Crawford's involvement in the Howard County fires. For each entry that was unconnected to a fire, the List would have become "significantly less inculpatory."

There was also a need for the evidence of the eight other fires to explain Mr. Crawford's motive for the Howard County fires. *Accord Nasim*, 34 Md. App. at 76 ("[G]enerally, evidence tending to show malice or motive is admissible in arson cases.") Ms. Byrne testified that she did not know Mr. Crawford, and the Anticos could not remember having any disagreements with him. The Hendersons could only recall two incidents: a confrontation about the dog collar Ms. Henderson was using, and Ms. Henderson's interruption of Mr. Crawford at a community meeting. None of this evidence seems to explain, on its own, Mr. Crawford's motive for setting the Howard County fires. However, as the circuit court noted, evidence from the eight other fires all together showed that "[Mr. Crawford] has certain behavior traits that may suggest . . . to a jury that there's no slight that could be trivial."

Having determined that there was "a significant necessity" for the admission of all eight fires, the circuit court then recognized that the evidence would be prejudicial to Mr. Crawford but balanced whether the necessity for the evidence was outweighed by the risk of unfair prejudice to Mr. Crawford. "I find there is a significant necessity on the part

---

[16] Mr. Hawkins, Jr. did not know Mr. Crawford; Mr. Hawkins, Sr. had worked with Mr. Crawford and had known him "in passing," but could not recall having had any negative interactions with Mr. Crawford.

of it that outweighs any prejudice, well[,] I don't see an undue prejudice but if there is, it's been outweighed by the necessity for [that evidence]." Under the circumstances of this case, we cannot say this determination was "flagrantly and outrageously" incorrect. *See Cousar*, 198 Md. App. at 517–18.

In an attempt to overcome this conclusion, Mr. Crawford argues that the circuit court incorrectly failed to limit the number of other fires that would be admitted. Rule 5-403 (and by extension, Rule 5-404(b)), he contends, implicitly limit the number of other bad acts that can be admitted, and the eight fires here exceeded that limit.[17] In other words, Mr. Crawford contends that the *number* of other bad acts, standing alone, can be dispositive of their admissibility. To further support his view, Mr. Crawford points to several out-of-state cases, arguing that "the admission of numerous other bad acts committed by the defendant is so prejudicial that it outweighs any probative value." We disagree.

First, we find no support in Maryland law that the number of other bad acts is determinative of their admissibility. Under our established framework for admitting evidence under Maryland Rule 5-404(b), courts must "carefully weigh the *necessity for and probativeness*" of the other bad acts against the unfair prejudice. *Faulkner*, 314 Md. at 640–41. Indeed, the number of other bad acts may bear on the need and probative

---

[17] Stated differently, Mr. Crawford is challenging the admission of all eight other fires because, in his view, eight was too many. By way of contrast, Mr. Crawford does not contend that two or three of the eight would have been enough to prove that he was the one who set the four Howard County fires or his motive in doing so. Nor does Mr. Crawford identify which of the eight other fires were unnecessary.

value for the evidence; but our law is also clear that both need and probative value require a case-specific inquiry. *See, e.g.*, *Cross*, 282 Md. at 474 ("In some cases, [the 5-404(b) balancing test] may require that evidence of the criminal actions of the defendant be totally excluded; in others, admission of portions or all of the evidence of the defendant's specific criminal actions may be permissible.")

Nor do the out-of-state cases Mr. Crawford cites suggest that the number of other bad acts is the only factor determinative of their admissibility. Although these cases involve other courts finding error in the admission of large numbers of other bad acts, the reasoning in these cases does not rest only on how many other bad acts there were; rather, it rests on the *need* for the evidence. These cases do not, as Mr. Crawford suggests, establish a bright-line rule that other bad act evidence is rendered inadmissible simply because many other bad acts are proffered. Moreover, in none of the out-of-state cases that Mr. Crawford cites was the other bad acts evidence necessary to prove identity or motive,[18] as it was here. We briefly summarize these cases.[19]

---

[18] In *State v. Reynolds*, 765 N.W.2d 283 (Iowa 2009), the court noted that the evidence of the other bad acts was relevant (although the relevance of some of them was lessened by their attenuation to the charged assault) for proving the defendant's motive. *Reynolds*, 765 N.W.2d at 290–92. However, because of the clear animus between the defendant and the victim, there was no *need* for all the bad act evidence to prove the defendant's motive. *Id.*

[19] We do not address Mr. Crawford's citation to *State v. Little*, 81 N.W.2d 302

Three of the out-of-state cases presented circumstances where there was no need for all the bad act evidence the State sought to admit. In *State v. Reynolds*, 765 N.W.2d 283 (Iowa 2009), the defendant was convicted of assaulting a man who was having an extramarital affair with (and eventually married) the defendant's wife. *Reynolds*, 765 N.W.2d at 287, *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). The Iowa Supreme Court determined it was error to admit evidence of eleven prior instances of harassment, threats, assault, and intimidation by the defendant toward the same victim. *Id.* at 291–92. The court concluded there was "little need" for all eleven instances to prove the defendant's intent, particularly because the fact of the affair "had already been disclosed." *Id.* at 291. Similarly, the Supreme Court of New Hampshire reversed a defendant's conviction in *State v. Marti*, 672 A.2d 709 (N.H. 1996), where "hundreds" of "identical" sexual assaults were not needed because they served no purpose beyond leading the jury "to conclude that because the defendant had sexually abused the victim [in the past], he probably committed the charged" assault. *Marti*, 672 A.2d at 711. In *People v. Turner*, 668 N.Y.S.2d 843 (N.Y. App. Div. 1998), the New York Supreme Court (Appellate Division) determined that thirty instances of the defendant issuing bad checks was "more 'than was appropriate or necessary to the jury's

---

(Iowa Ct. App. 2010), because it does not conform to Maryland Rule 1-104(b). Under this rule, out-of-state opinions may be cited as persuasive authority "if the jurisdiction in which the opinion was issued would permit it to be cited as persuasive authority or precedent." Md. Rule 1-104(b). Further, "[t]he citation shall indicate whether the opinion is precedent in the issuing jurisdiction." *Id*. In Iowa, "[u]npublished opinions or decisions of a court or agency do not constitute controlling legal authority, but they may be cited as providing persuasive reasoning." Iowa R. App. P. 6.904(2)(a)(2). However, Mr. Crawford did not indicate to us whether *State v. Little* is precedent in Iowa.

evaluation of [the] defendant's credibility[,]'" but did not reverse after concluding that the error was harmless. *Turner*, 668 N.Y.S.2d at 844.

The fourth out-of-state case, *Williams v. State*, 983 N.E.2d 661 (Ind. Ct. App. 2013), is a post-conviction case where the Indiana Court of Appeals held the defense counsel was deficient for failing to object to prior bad acts evidence having no relevance "other than [to Mr.] Williams' propensity to commit the charged crimes[.]" *Williams*, 983 N.E.2d at 666. The improper nature of the evidence, again, did not hinge on how many other bad acts there were but instead turned on the need (or lack thereof) for all of them.

Ultimately, we see no abuse of discretion in the circuit court admitting evidence of the eight other fires under the circumstances here. As required under our law, the circuit court engaged in a fact-specific analysis and determined that the need for evidence of all eight fires was not substantially outweighed by unfair prejudice. Although the circuit court was aware of the number of other fires that the State wanted to offer,[20] the court did not find that number to be dispositive. We see no error in the circuit court's analysis. Accordingly, we do not address Mr. Crawford's contention that admission of the eight fires was not harmless.

---

[20] The circuit court acknowledged Mr. Crawford's argument about the number of other fires, and as Mr. Crawford now emphasizes, termed it as a "back-loader of evidence in other crimes[.]" Despite doing so, however, the circuit court found that the necessity of evidence of all eight other fires was not outweighed by unfair prejudice before admitting them all.

**II.**  **The circuit court did not abuse its discretion by denying Mr. Crawford's motion for a mistrial based on testimony that he refused consent to search his phone.**

### A.  *Mr. Crawford's Contentions*

Mr. Crawford also claims that the circuit court erred by admitting evidence that Mr. Crawford had withheld consent for a search of his cellphone, and further, that the circuit court abused its discretion by denying the mistrial motion Mr. Crawford made afterward. Mr. Crawford argues that evidence of a defendant refusing to give consent to a search "is inadmissible, prejudicial *per se*, and cannot be cured." Premising his argument on *Longshore v. State*, 399 Md. 486 (2007), Mr. Crawford contends that the circuit court erroneously determined a curative instruction could have cured the situation, and thus wrongfully denied his request for a mistrial.

### B.  *Testimony Regarding Mr. Crawford's Lack of Consent to Search his Phone*

The testimony that prompted Mr. Crawford's mistrial motion is as follows:

[PROSECUTOR]: Can you tell the jury what kind of cellphone [you recovered from Mr. Crawford] is?

[DETECTIVE SMITH]: Yes, it's an Apple iPhone.

[PROSECUTOR]: And then did you make contact with [Mr. Crawford] in regards to that phone?

[DETECTIVE SMITH]: Yes, I did.

[PROSECUTOR]: And did you make a request of [Mr. Crawford] about that phone?

[DETECTIVE SMITH]: Yes. I asked him for both permission to search the phone and the passcode to the phone.

[PROSECUTOR]: And did he give that to you?

25

[DETECTIVE SMITH]: He did not give me permission to search the phone, but he did give me the passcode to the phone.

Defense counsel immediately objected. The prosecutor explained that "he obviously didn't know that there was no consent," and that he was "only asking for the purpose of the passcode."

Mr. Crawford moved for a mistrial, which the circuit court denied. The circuit court determined that Detective Smith's answer was a "blurt"[21] and twice offered Mr. Crawford the remedy of a curative instruction;[22] Mr. Crawford declined.

### C.    *Law*

Maryland applies a "well established analytical framework" when determining whether a "blurt" prejudices a defendant enough to warrant a mistrial. *Washington v. State*, 191 Md. App. 48, 100 (2010). This framework revolves around five factors initially laid out in *Guesfeird v. State*, 300 Md. 653 (1984). These five factors are: (1) whether the inadmissible evidence "was repeated or whether it was a single, isolated statement;"

---

[21] A "blurt" or a "blurt out" has been defined as "an abrupt and inadvertent nonresponsive statement made by a witness during his or her testimony." *Washington v. State*, 191 Md. App. 48, 100 (2010) (citing *State v. Hawkins*, 326 Md. 270, 277 (1992)). Neither party challenges the circuit court's determination that Detective Smith's answer was a "blurt."

[22] The curative instruction offered by the circuit court to the jury was:

[Y]ou heard Sergeant Smith's testimony that Mr. Crawford did not give him permission to access Mr. Crawford's phone. Every citizen is entitled to deny such a request. You're not permitted to consider the denial of permission as evidence of guilt. Further, I'm striking that testimony which means that you are to treat that testimony as never happening and you are not to consider it at all.

26

(2) whether the inadmissible evidence was inadvertent rather than intentionally solicited by counsel; (3) whether the witness testifying to the inadmissible evidence "is the principal witness upon whom the entire prosecution depends;" (4) "whether credibility is a crucial issue;" and (5) "whether a great deal of other evidence exists[.]"[23] *Guesfeird*, 300 Md. at 659. These factors, however, "are not exclusive and do not themselves comprise the test." *Rainville v. State*, 328 Md. 398, 408 (1992) (quoting *Kosmas v. State*, 316 Md. 587, 594 (1989)). Indeed, "[e]very trial is different and the test articulated in *Guesfeird* is open-ended and fact-specific." *Washington*, 191 Md. App. at 100.

A mistrial is an "extraordinary remedy"[24] that is necessary only when "the prejudice to the defendant was so substantial that [the defendant is] deprived of a fair trial." *Kosh v. State*, 382 Md. 218, 226 (2004) (quoting *Kosmas*, 316 Md. at 594). *See also Wilson v. State*, 148 Md. App. 601, 666 (2002) (requiring that appellants demonstrate "real and substantial prejudice" necessitating a mistrial). With their "finger on the pulse of the trial," the circuit court is in the best position to evaluate prejudice to the defendant. *State v. Hawkins*, 326 Md. 270, 278 (1992). Thus, we review the circuit

---

[23] *Guesfeird* involved a "blurt" that indicated to the jury that the witness had taken a lie detector test. *Guesfeird*, 300 Md. at 656–57. Regarding such "blurts," a court should also consider "whether an inference as to the result of the test should be drawn." *Id.* at 659. In situations like the present case, however, we focus on the first five factors provided in *Guesfeird*. *See, e.g.*, *Rainville v. State*, 328 Md. 398, 408 (1992).

[24] *Whack v. State*, 433 Md. 728, 751 (2013) (quoting *Powell v. State*, 406 Md. 679, 694 (2008)).

court's decision to deny a mistrial under an abuse of discretion standard. *Simmons v. State*, 436 Md. 202, 212 (2013).

### D. Analysis

Under the facts presented in this case, we cannot say the circuit court abused its discretion by denying Mr. Crawford's motion for a mistrial.

We conclude that none of the factors articulated in *Guesfeird* weigh in favor of a mistrial. As for the first two factors, Detective Smith's comment about Mr. Crawford's denying consent to search was a one-off that was unsolicited by the State. As such, the comment was a "blurt." *See Washington*, 191 Md. App. at 100. Third, although Detective Smith was an officer involved in the investigation of Mr. Crawford, he was one of twenty-nine witnesses the State called (and one among many investigating officers); by no means was he the State's "principal witness."

Fourth, witness credibility was no more important here than it ordinarily would be; in other words, witness credibility was not crucial to the State's case against Mr. Crawford. *Guesfeird* itself is instructive on this point, as it was a case where the prosecution relied on the truth of a single witness's testimony (the witness who uttered the "blurt"), making credibility "the crucial issue for the jury." 300 Md. at 666. The "blurt" the witness made related to a lie detector test she had taken, creating the "unavoidable inference" that "if she took the test, she passed and was telling the truth at trial; otherwise, the prosecution would not have gone forward with her as the only witness." *Id.* Here, by contrast, Detective Smith's blurt had no real bearing on the

28

credibility of any of the State's witnesses.[25] Although an improper inference could be drawn about Mr. Crawford's guilt due to his lack of consent, the blurt would not support an inference of untruthfulness (or truthfulness) about the State's witnesses.

Fifth, a "great deal of other evidence" was presented to link Mr. Crawford to the fires beyond the testimony of Detective Smith that Mr. Crawford refused consent for his phone to be searched. *Id.* at 659. Thus, none of the *Guesfeird* factors suggest that a mistrial was warranted.

Moreover, we note that, contrary to Mr. Crawford's contentions, our Supreme Court's decision in *Longshore* is not determinative here. In *Longshore*, the Court found that the circuit court abused its discretion by refusing to grant a mistrial after a detective testified that the defendant refused consent to search his vehicle. *Longshore*, 399 Md. at 535. Because refusing to consent to a warrantless search is a constitutional right, the Court explained, refusal to consent cannot be used to "implicate guilt" because "[a]n unfair and impermissible burden would be placed upon the assertion of a constitutional right if the State could use a refusal to a warrantless search against an individual." *Id.* at 537. Under the circumstances presented in *Longshore*, the defendant "was prejudiced by the inadmissible testimony and the instruction of the court to disregard the testimony did not cure the error." *Id.* at 538. Central to this holding, however, was the importance of the defendant's knowledge to the case. "An important issue in the case was whether [the

---

[25] Notably, the State presented twenty-eight other witnesses to support the charges against Mr. Crawford besides Detective Smith, and Mr. Crawford did not present a case. Thus, even if the "blurt" had implicated the credibility of Detective Smith, we would not see credibility as a "crucial issue" in this case.

defendant] had knowledge of the contraband contained within [his] car." *Id.* Because the jury could have inferred from the defendant's refusal of consent that he knew his vehicle contained drugs, the Court could not consider the error to be harmless. *Id.*

Here, however, the charges against Mr. Crawford did not hinge on his *knowledge* of what a search of his phone would reveal. Instead, the core of the State's case was whether Mr. Crawford was the one who set the Howard County fires, and his intent in doing so. Moreover, while Mr. Crawford did not consent to the search of his phone, he did provide Detective Smith the passcode to his phone and did not object to the admission of what was found on his phone (or other electronic devices) after they were searched. In short, *Longshore* is inapposite here because Mr. Crawford was not prejudiced by Detective Smith's "blurt." The evidence of Mr. Crawford's guilt extended well beyond any impermissible inference that might have been drawn from Mr. Crawford's lack of consent.

Faced with these circumstances, the circuit court, with its "finger on the pulse of the trial," *Hawkins*, 326 Md. at 278, analyzed the situation and determined that a curative instruction would adequately address any prejudice from Detective Smith's comment. Mr. Crawford, as was his right, denied this curative instruction. In our view, though, the decision that the "extraordinary remedy" of a mistrial was unwarranted did not constitute an abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS ARE TO BE PAID BY APPELLANT.**

30